UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| vs. | Case No. 23-CR-30031 |
| WARNELL REID, JR., | |
| Defendant. | |

## MOTION TO DISMISS INDICTMENT BECAUSE OF THE SECOND AMENDMENT AND *N.Y. STATE RIFLE & PISTOL ASS'N V. BRUEN*

Now comes the Defendant, WARNELL REID, JR., by and through his attorney, Robert J. Scherschligt, Assistant Federal Public Defender, and pursuant to Federal Rule of Criminal Procedure 12, moves to dismiss the Indictment because 18 U.S.C. § 922(g)(1), as applied to him, is unconstitutional in violation of the Second Amendment.

Federal Rule of Criminal Procedure 12(b)(3) allows a party to move to dismiss an indictment prior to trial if the indictment contains a defect. Fed. R. Crim. P. 12(b)(3). A motion to dismiss an indictment does not challenge the strength of the government's case or the sufficiency of the evidence; rather, the Court must determine

"whether it's possible to view the conduct alleged" as constituting the crime charged. *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009).

**I.  Section 922(g)(1) is unconstitutional as applied to the Defendant because the Second Amendment's text covers the conduct at issue and there is no historical tradition of permanently disarming felons like him.**

The Second Amendment provides, simply enough: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

In *N.Y. State Rifle & Pistol Ass'n v. Bruen*, the Supreme Court clarified the operative framework for assessing Second Amendment challenges: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. 2111, 2129 (2022). Put differently, "the government must affirmatively prove" the constitutionality of the firearm restriction by pointing to comparable historical firearms regulations. *Id.* at 2127.

2

Because the Second Amendment covers both 18 U.S.C. § 922(g)(1) and the Defendant as a felon, the Second Amendment presumptively applies. The government, for its part, cannot overcome this presumption and carry its burden of showing that section 922(g)(1), as applied to the Defendant, is part of the country's historical tradition of firearms regulation.

**A.     The plain text of the Second Amendment covers the permanent prohibition on firearm possession in Section 922(g)(1) and encompasses felons as members of "the people."**

*Bruen* first requires courts to determine whether the text of the Second Amendment applies before the historical burden flips to the government. *See, e.g., Range v. Att'y Gen.*, 69 F.4th 96, 101 (3d Cir. 2023) (en banc) (*citing Bruen*, 142 S. Ct. at 2134–35). In this case it does.

The criminalized conduct in section 922(g)(1) falls squarely within the Second Amendment's protection. This statutory provision makes it an offense for a person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to ever possess a firearm again. The Defendant's possession of a firearm implicates his right to "keep and bear

Arms," meaning the constitutional protection applies to Section 922(g)(1). *See, e.g., id.* at 103 (describing the request "to possess a rifle" as "track[ing] the constitutional right").

The Defendant also falls within the Second Amendment since he is a member of "the people." In *District of Columbia v. Heller*, the Supreme Court explained that these two words mean the Second Amendment right "belongs to all Americans." 554 U.S. 570, 581 (2008). This conclusion, according to the Court, stems from the Constitution's structure and text. Six other constitutional provisions use the term "the people"—including the First and Fourth Amendments—and in each provision "the term unambiguously refers to all members of the political community, not an unspecified subset." *Id.* at 580. As a member of the political community, an individual like the Defendant does not lose his Second Amendment rights because of his criminal history, just as he does not lose his First Amendment right to petition the government and his Fourth Amendment right to be free from warrantless home searches. The upshot of this identical language is clear: the Second Amendment applies to felons and non-felons alike.

Lower courts, including the Seventh Circuit, have heeded *Heller*'s guidance of consistent interpretation. In analyzing whether noncitizens could invoke the Second Amendment's protections, the Seventh Circuit concluded the answer was yes because "an interpretation of the Second Amendment as consistent with the other amendments passed as part of the Bill of Rights has the advantage of treating identical phrasing in the same way and respecting the fact that the first ten amendments were adopted as a package." *United States v. Meza-Rodriguez*, 798 F.3d 664, 670 (7th Cir. 2015). Same, too, with the Third Circuit's en banc decision in *Range*, which concerned a felon raising an as-applied challenge to 922(g)(1), just like the Defendant in this case. *See* 69 F.4th at 102 ("Unless the meaning of the phrase "the people" varies from provision to provision … to conclude that Range is not among "the people" for Second Amendment purposes would exclude him from those rights as well."); *see also United States v. Carrero*, 2022 WL 9348792, at *2 (D. Utah Oct. 14, 2022) (concluding convicted felons are among "the people"); *United States v. Williams*, 2022 WL 18285005, at *2 (N.D. Ga. Nov. 14, 2022) (same); *Campiti v. Garland*, 2023 WL 143173, at *3 (D. Conn. Jan. 10, 2023) (same).

Arguments excepting felons from the people misconstrue the difference between automatically losing one's Second Amendment rights versus gaining eligibility to lose them. Said differently, even though the legislature may hold the power to strip certain groups of their Second Amendment right when a historical tradition of doing so exists, every American—whether a felon or not—still possesses Second Amendment rights. In a separate opinion from 2019 that contemplated much of *Bruen*'s teachings, then-Judge Barrett discussed the significance of this distinction:

> [A] person could be in one day and out the next: the moment he was convicted of a violent crime or suffered the onset of mental illness, his rights would be stripped as a self-executing consequence of his new status. … Neither felons nor the mentally ill are categorically excluded from our national community. That does not mean that the government cannot prevent them from possessing guns. Instead, it means that the question is whether the government has the power to disable the exercise of a right that they otherwise possess, rather than whether they possess the right at all.

*Kanter v. Barr*, 919 F.3d 437, 453 (7th Cir. 2019) (Barrett, J., dissenting).

At bottom, the Second Amendment applies to felons. And for all the reasoning above, multiple appellate courts have rejected the government's attempts to narrow the scope of the right to law-

abiding citizens only. *See, e.g., Meza-Rodriguez*, 798 F.3d at 669 (explaining that *Heller*'s "law-abiding citizen passages did not reflect an attempt to define the term 'people'"); *Range*, 69 F.4th at 101–02; *United States v. Rahimi*, 61 F.4th 443, 451–53 (5th Cir. 2023), *cert. granted*, No. 22-915, 2023 WL 4278450 (U.S. June 30, 2023).

The Defendant, even as a felon, is a member of "the people" and therefore holds Second Amendment rights.

**B.    The government cannot demonstrate that Section 922(g)(1), which permanently deprives all felons of the right to bear arms, is consistent with the Nation's historical tradition of firearm regulation.**

Because the Second Amendment applies to the Defendant and the charged 922(g)(1) offense, *Bruen* instructs that "the Constitution presumptively protects that conduct." 142 S. Ct. at 2126. To rebut that presumption, the government bears the burden of demonstrating that a challenged regulation "is consistent with this Nation's historical tradition of firearm regulation." *Id.* The Seventh Circuit has described this burden as a "demanding standard." *Atkinson v. Garland*, 70 F.4th 1018, 1022 (7th Cir. 2023). In short, the government must "roll[] up its sleeves and examine[] a wealth of laws and commentary spanning several centuries." *Id.* Pointing to

"only a couple isolated historical facts and incidents" will "not suffice under *Bruen*." *Id.*

Section 922(g)(1) reflects a congressional choice to permanently disarm a specific category of individuals: felons. History, however, does not support a permanent ban applying to all felons.

People faced felony convictions when the Second Amendment was ratified in 1791, so section 922(g)(1) addresses a "general societal problem that has persisted since the 18th century." *Bruen*, 142 S. Ct. at 2131. When laws address a "longstanding" problem like that, *id.* at 2133, the Supreme Court clarified that the historical inquiry is demanding: "the lack of a *distinctly similar* historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* at 2131 (emphasis added). If "the Founders themselves could have adopted" a particular regulation "to confront [the longstanding] problem" but did not do so, then the law today is unconstitutional. *Id.*

The demanding nature of this "distinctly similar" inquiry is further illustrated by the contrasting approach to modern problems

that have no historical basis. For "modern regulations that were unimaginable at the founding," the government need only produce historical evidence that is "relevantly similar." *Id.* at 2132. Framed another way, "if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional." *Id.* at 2131; *see also Range*, 69 F.4th at 103 (recognizing these two different analytical standards prescribed by *Bruen*); *Rahimi*, 61 F.4th at 455 (same).

Because section 922(g)(1) addresses a longstanding societal problem—the permanent disarmament of all felons—the lack of "distinctly similar" historical regulation presents two, independent reasons for concluding that the statute is unconstitutional as applied to the Defendant. First, there is no historical tradition from the Founding of *permanently* disarming felons.

Put simply, the Defendant contends that the government cannot meet its burden under *Bruen* to show that there were "distinctly similar" laws in our Nation's history.

## II. Conclusion

WHEREFORE, the premises considered, the Defendant, WARNELL REID JR., respectfully requests the entry of an Order dismissing the indictment because 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him.

Respectfully submitted,

August 29, 2023   WARNELL REID, JR., Defendant,

*s/ Robert J. Scherschligt*
BY: Robert J. Scherschligt (IL No. 6216807)
Assistant Federal Public Defender
600 E. Adams St., Third Floor
Springfield, IL 62701
Telephone: 217-492-5070
Facsimile: 217-492-5077
E-mail: Robert_scherschligt@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*s/ Robert J. Scherschligt*