IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 23-cr-30031 |
| ) | |
| **WARNELL REID, JR.,** ) | |
| ) | |
| **Defendant.** ) | |

**OPINION AND ORDER**

**SUE E. MYERSCOUGH, U.S. District Judge.**

Before the Court is Defendant Warnell Reid's Motion to Dismiss Indictment. See Def.'s Mot. Dism., d/e 16. Earlier this year, a grand jury indicted Mr. Reid on one count of possessing a firearm as a felon. Relying on the "historical tradition" test set forth in N.Y. State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111 (2022), Mr. Reid argues that the statute underlying his single-count Indictment—18 U.S.C. § 922(g)(1), which bars people convicted of felony offenses from possessing firearms—is unconstitutional as applied to him. Id. at 3 (citing Bruen, 142 S. Ct. at 2129).

Both Bruen and the Seventh Circuit's recent decision in Atkinson v. Garland, 70 F.4th 1018 (7th Cir. 2023), compel a "a

proper, fulsome analysis of the historical tradition supporting" the statute at issue here. Atkinson, 70 F.4th at 1022. Under Atkinson, this Court must analyze every constitutional challenge to a firearms restriction—criminal, civil, administrative, or otherwise—through the framework set out in Bruen. Id. ("Nothing allows [courts] to sidestep Bruen in the way the government invites."). In other words, this Court "must undertake the text-and-history inquiry the [Bruen] Court so plainly announced and expounded upon at great length." Id. And that inquiry, according to the Supreme Court, must proceed as follows:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

Bruen, 142 S. Ct. at 2129–30.

For further guidance, the Court directs the parties' attention to Atkinson, in which the Seventh Circuit proposed a set of "interrelated and non-exhaustive questions [that] may help focus

the proper analysis." Atkinson, 70 F.4th at 1023. The parties' briefing should address these questions, including:

> 1. Does [§ 922(g)(1)] address a "general societal problem that has persisted since the 18th century?" Bruen, 142 S. Ct. at 2131. If this problem existed during a relevant historical period, did earlier generations address it with similar or "materially different means?" Id.
>
> 2. What does history tell us about disarming those convicted of crimes generally and of felonies in particular? Among other sources, the parties could look to commentary from the Founders, proposals emerging from the states' constitutional ratifying conventions, any actual practices of disarming felons or criminals more generally around the time of the Founding, and treatment of felons outside of the gun context (to the extent this treatment is probative of the Founders' views of the Second Amendment). When considering historical regulations and practices, the key question is whether those regulations and practices are comparable in substance to the restriction[s] imposed by [§ 922(g)(1)]. To answer the question, . . . the parties should consider how the breadth, severity, and the underlying rationale of the historical examples stack up against [§ 922(g)(1)].
>
> 3. Are there broader historical analogues to [§ 922(g)(1)] during the periods that Bruen

emphasized, including, but not limited to, laws disarming "dangerous" groups other than felons? The parties should not stop at compiling lists of historical firearms regulations and practices. The proper inquiry, as we have explained, should focus on how the substance of the historical examples compares to [§ 922(g)(1)].

4. If the [parties'] historical inquiry identifies analogous laws, do those laws supply enough of a historical tradition (as opposed to isolated instances of regulation) to support [§ 922(g)(1)]? On this front, the parties should provide details about the enforcement, impact, or judicial scrutiny of these laws, to the extent possible.

5. If history supports [Mr. Reid's] call for individualized assessments or for a distinction between violent and non-violent felonies, how do we define a non-violent or a non-dangerous felony? And what evidence can a court consider in assessing whether a particular felony conviction was violent? For instance, can a court consider the felony conviction itself, the facts of the underlying crime, or sentencing enhancements? Bruen shows that these distinctions should also have firm historical support. See 142 S. Ct. at 2132–33 (explaining that the court must assess whether modern and historical regulations are "relevantly similar," including in terms of how and why the regulations burden gun rights).

Atkinson, 70 F.4th at 1023–24.

The parties should freely "cast a wider net and provide more detail about whatever history they rely on."[1]  Id. at 1024.  They also should freely employ the expert services of historians and historiographers.  See Jacob D. Charles, The Dead Hand of a Silent Past, 73 Duke L.J. (forthcoming 2023) (manuscript at 69–70) (on file

---

[1] On this point, the dissenting opinion in Atkinson is particularly instructive:

> The assessment of any gun regulation should begin with a look at the type of measure under consideration: to use Professor Volokh's taxonomy, is it a "what, who, where, how, or when" regulation?  Once we know that, we can begin the task of identifying the proper historical analogues.  For example, felon disarmament is a "who" restriction.  That directs us to historical restrictions on the classes of persons who were allowed to own or possess guns.  In addition, one needs to look at the regulatory method the statute embodies: total disarmament for life; disarmament for a term of years; qualified rights to have the weapon with proper sureties; restrictions on particularly sensitive places (courthouses, churches, schools) or times or manner (open-carry, concealed-carry).  Throughout all of this, one must also bear in mind that Bruen does not demand historical "dead ringers."  It is enough to identify a problem with private gun ownership and find the relevantly similar type of solution that was thought to be adequate by our forebears.

Atkinson, 70 F.4th at 1034–35 (Wood, J., dissenting).

with author) (arguing that expert historians "can help inform a judge about how complicated and contested the historical landscape can be"); see also United States v. Bullock, No. 18-cr-165, 2023 WL 4232309, at *15 (S.D. Miss. June 28, 2023) ("The most disappointing failure is that the party with the burden to prove history and tradition—the United States—did not designate a historian to testify on the analogues, if any, to modern felon-in-possession laws.").  In a similar vein, this Court will invite and "accept amicus briefs to assist with its inquiry."  Atkinson, 70 F.4th at 1024.

The Government shall file its response brief by no later than noon on September 29, 2023.  Mr. Reid may file a reply brief, if appropriate, by no later than noon on October 13, 2023.

**IT IS SO ORDERED.**

**ENTERED:  AUGUST 31, 2023**

**FOR THE COURT:**

*s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**