E-FILED
Tuesday, 05 May, 2026 03:27:55 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 23-cr-30031 |
| | ) | |
| WARNELL REID, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

**SUE E. MYERSCOUGH, United State District Judge**

Before the Court are Defendant Warnell Reid, Jr.'s pro se Motions for Discovery (d/e 56, d/e 66). The Court has already granted in part Defendant's Motions only as to his request for a pre-plea presentence investigation report. *See* Text Order (d/e 73). Because the Government has already complied with their discovery obligations the remaining requests raised in Defendant's Motions (d/e 56, d/e 66) are DENIED, except as to requests for expert disclosures, which are now GRANTED.

## BACKGROUND

Defendant was charged via Indictment (d/e 1) on June 6, 2023 with possession of a firearm by a felon, in violation of 18 U.S.C. §

922(g)(1).  From June 23, 2023 to April 14, 2026, Defendant was represented by Assistant Federal Public Defender Robert Scherschligt.  On July 22, 2025, this Court entered an Opinion and Order (d/e 43) denying Defendant's Motion to Dismiss Indictment as Unconstitutional (d/e 16) under the Second Amendment to the U.S. Constitution and the Supreme Court's holding in *Bruen*, which was filed by Mr. Scherschligt.  *See N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

On April 1, 2026, Defendant filed a pro se Motion to Proceed Pro Se and Motion Objecting to Appointment of Standby Counsel (d/e 52).  This Court held a hearing on Defendant's Pro Se Motion pursuant to *Faretta v. California*, 422 U.S. 806 (1975), on April 14, 2026.  During that hearing, the Court discussed with Defendant the basis for his request to proceed pro se.  The Court engaged in a colloquy with Defendant regarding his background, the charged offense, possible penalties, the rules that would apply to him at trial, and the Court's opinion as to the effectiveness and advantage of having trial counsel rather than proceeding pro se.

After that colloquy, the Court found that Defendant had knowingly and voluntarily waived his right to counsel and would be permitted to represent himself.

At the *Faretta* hearing and in his written Motion (d/e 52), Defendant also objected to the appointment of standby counsel, in part due to his belief that he would not personally have ready access to discovery which he believed would be sent by the Government to standby counsel.  This Court asked the Government to explain on the record during the hearing its protocol for discovery in a case with a pro se criminal Defendant and standby counsel.

In relevant part, the Government explained that it would typically provide a copy of discovery to both standby counsel and to a pro se defendant via the standard jail discovery process.  The Government noted that the U.S. Postal Service is currently experiencing delays in the area served by the Central District, such that a defendant's ability to communicate with standby counsel via telephone or in-person visits could prove to be more efficient than the defendant relying exclusively on written communications exchanged between the Government and Defendant through the mail.  The Government also advised that it cannot alter the jail's

own policies as to a pro se defendant's law library access or rules limiting the possession of certain papers or other discovery documents in a defendant's cell.

In short, the Government indicated that it would send the same discovery to Defendant personally that it would send to counsel (or standby counsel) but that Defendant may be at a disadvantage simply because he is reliant on receiving mail through the jail—rather than email disclosures or telephone communications with the Government—and because he is still subject to the jail's security policies.  Based upon Defendant's expressed preferences, the Government clearly expressed its willingness to send paper copies of all written discovery in addition to electronic copies.  Of course, any video footage subject to discovery could only be sent via a digital copy to be reviewed by Defendant on a jail computer.

Following this discussion about discovery procedures, the Court appointed standby counsel over Defendant's objection, citing *McKaskle v. Wiggins*, 465 U.S. 168, 184 (1984).

Finally, during the hearing Defendant tendered four pro se Motions (d/e 55-58), including one of the pending Motions for

Discovery (d/e 56), for filing with the Clerk of Court. On the record and in a subsequent Text Order, the Court ordered the Government to respond to those motions within fourteen days. Defendant then filed a subsequent Motion to Compel Discovery (d/e 66) on April 29, 2026. That same day, the Government filed its Response (d/e 69) as ordered.

## ANALYSIS

Because Defendant is pro se, the Court liberally construes the instant Motions (d/e 56, d/e 66). *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). Defendant's Motions are brought pursuant to Federal Rule of Criminal Procedure 16(a), *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972).

Rule 16(a)(1) provides that the following information is generally subject to disclosure by the Government: any relevant oral statement made by the defendant in response to interrogation by a known government agent; any relevant written or recorded statement by the defendant, if in the government's possession or known by the government's attorney to exist; the defendant's prior criminal record; certain documents and tangible objects, if within

the government's possession and either material to preparing the defense or if the government intends to use the item at trial; and expert witness disclosures.

In *Brady*, the Supreme Court held that it is a violation of the Due Process Clause of the Fifth Amendment for the government to withhold evidence that is material to the guilt or innocence of the defendant.  373 U.S. at 87.  In *Giglio*, the Supreme Court expanded upon *Brady* to hold that evidence bearing on the credibility of a witness—if it may be determinative of guilt or innocence—is subject to the same disclosure requirements as other material evidence under *Brady*.   405 U.S. at 154.

In addition to the Government's obligations under Rule 16, *Brady*, and *Giglio*, as cited in Defendant's Motions and acknowledged in the Government's Response, the Government also cites to the Jencks Act, 18 U.S.C. § 3500.  The Jencks Act provides that "no statement or report in the possession of the United States which was made by a Government witness or prospective witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."  18 U.S.C. § 3500(a).

Page **6** of **16**

With the bases for Defendant's discovery requests having been addressed, the Court now considers the specific requests listed in Defendant's Motions.

First, Defendant requests "[a]ny and all police reports, supplemental reports, handwritten notes pertaining to this offense from the Springfield Police Officers Sergeant Smiddy and Officer Hugh[e]s." (d/e 56 at 2 ¶ 1). The Government responds that it has already produced the police report drafted by Officer Hughes but that Sergeant Smiddy did not respond to this incident and therefore did not produce any report. Because the Government has already produced the police report written by Officer Hughes, and no reports exist for Sergeant Smiddy, Defendant's first request is denied as moot.

However, to the extent that there are any other police reports—including conflicting or differing reports, as Defendant suggests may exist—the Government is aware of its obligations under *Brady* and *Giglio* and is expected to comply with those obligations. *See, e.g., United States v. Johnson*, 2012 WL 1994848, at *3 (S.D. Ill. June 4, 2012) ("It has been repeatedly held that where the Government has made assurances it will comply with

*Giglio* and *Brady*, those assurances are sufficient." (collecting cases)).  Otherwise, under the Jencks Act this Court cannot order the Government to produce a report by a Government witness until after the witness has testified on direct examination at trial.

Second, Defendant requests "[a]ny and all unedited body camera [video and] audio footage, vehicle dash cam video and audio footage of the 3 vehicles involved and surveillance and arrest of defendant, Officers Cero, Hughs and Sgt. Smiddy." (d/e 56 at 2 ¶ 2). The Government responds that body worn camera footage for all officers involved in Defendant's arrest has already been produced. However, Sergeant Smiddy did not respond to the incident and therefore does not have any responsive video or audio footage. Further, while the Government explains that Sergeant Spaid and Officer Zock were conducting surveillance in the area, they did not have their body worn cameras activated.  Finally, the Government indicates that the Springfield Police Department did not have dash cameras at the time of Defendant's arrest.  Because the Government has already produced the body cam footage for all law enforcement involved in Defendant's arrest and no further video or audio footage exists, Defendant's second request is denied as moot.

Third, Defendant requests "[a]ny written or taped [*illegible*]... and all confidential informants involved in this case." (d/e 56 at 2 ¶ 3). The Government responds that there were no confidential informants used in this case. Rather, the Government asserts that law enforcement officers "were in the area investigating a separate matter which involved a tip from a confidential source" and that "any information from [that] confidential source is not relevant or helpful to the defense." (d/e 69 at 9 ¶ e). Defendant's third request is denied because Defendant did not produce any evidence or argument that would demonstrate a need for information about confidential informants. *See United States v. Valles*, 41 F.3d 355, 358 (7th Cir. 1994) (holding that the Government is granted the confidential informant privilege, which protects from disclosure a confidential informant's identity, "as a right" and "[w]hile a defendant can overcome the confidential informant privilege by demonstrating a need for the information, he bears this burden in the face of an assumption that the privilege should apply").

Fourth, Defendant requests the "Springfield Police Dept. Dispatching Center report on how many times on the date of April 9th 2023 defendant[']s name was [*illegible*]...warrants," including

"the time and D.S.N. Numbers of the officers whom [*sic*] requested [*illegible*]." (d/e 56 at 2 ¶ 4).  In response, the Government indicates that it has already disclosed video to Defendant that records Officer Hughes using his in-squad computer to run checks on Defendant. In addition, the Government has produced copies of Defendant's criminal record.  The Government otherwise states that it "does not currently have a dispatch log in this case" and argues that Defendant has not identified how this information is material. (d/e 69 at 9 ¶ f).  Although Defendant's request for a dispatch log could potentially fall within Rule 16(a)(1)(E)(i), the Court agrees with the Government that Defendant has not identified how this log is material to preparing his defense.  Therefore, Defendant's fourth request is denied at this time.  However, to the extent any issues regarding the timing or sequence of dispatches may be relevant to Defendant's Motion to Suppress (d/e 57), the Government should be prepared to either produce dispatch logs during the suppression hearing or in a post-hearing filing at the Court's request.

Fifth, Defendant requests "[a]udio and video of residence of home on 900 block of Phillips Ave across the street from where the defendant was arrested." (d/e 56 at 2 ¶ 5).  The Government

responds that it is not in possession of any videos from residences in the proximity of Defendant's arrest. Specifically, the Government acknowledges that Officer Hughes' body cam video shows that he asked residents for surveillance video and they told him that their video cameras would not have shown the street where Defendant was arrested. Because the Government is not in possession of any residential video footage, the Court cannot order its production to Defendant. *See* Rule 16(a)(1)(E). Therefore, Defendant's fifth request is denied.

Sixth, Defendant requests "[a]ny reports of disciplinary repo[rts or impro]per conduct citations on the Springfield Police Dept. Officers Hugh[e]s, Sgt. Smiddy, [*illegible*]... Cero" in the possession of the Government. (d/e 56 at 2 ¶ 6). In response, the Government acknowledges its intent to comply with its obligations under *Giglio* but indicates that it is unaware of any records subject to disclosure under *Giglio* at this time. Therefore, no records responsive to Defendant's sixth request have been disclosed by the Government. The Government is correct that a defendant is "not entitled to the personnel files of the law enforcement witnesses without even a hint that impeaching material [is] contained

Page **11** of **16**

therein." *United States v. Andrus*, 775 F.2d 825, 843 (7th Cir. 1985). Defendant's sixth request is denied on this basis. However, the Court expects that the Government will comply with its obligations under *Giglio* should it become aware of any evidence bearing on the credibility of a witness, if potentially material to Defendant's guilt or innocence.

Seventh, Defendant requests "[a]ny reports the government has in its possession that relates [*sic*] why and whom refer[r]ed the defendant[']s State of Illinois felon in posses[sion fire]arm charge for federal prosecution." (d/e 56 at 2 ¶ 7). Defendant has not cited any legal basis under Rule 16, *Brady*, *Giglio*, or otherwise for this request. Any decision to charge Defendant in the Central District of Illinois rather than the Sangamon County Circuit Court appears to fall within information that is not subject to disclosure under Rule 16(a)(2), which governs "internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Therefore, Defendant's seventh request is denied.

Finally, Defendant requests "[a]ny and all reports on firearm related to this instant charge, especially, fingerprints, DNA, and

[th]e federal trace reports on the firearm" as well as "[a]ny and all expert testimony [*illegible*]… the governments [*sic*] intends to call, and anything covered under federal rules of evidence 702, 703, and 705." (d/e 56 at 3 ¶¶ F-G).  In the Government's Response, the Government indicates that it has already produced multiple photographs of the firearm in this case and that it intends to bring the firearm itself to court for review by the jury at trial, in coordination with courthouse security.  The Government has also notified Defendant of its intention to call a firearms nexus expert, Frank Cecchinelli, who is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives and who anticipates reviewing the case and rendering his opinions early this month. The Court finds that the Government has complied with its obligations under Rule 16(a)(1)(E) by disclosing photographs of the firearm.  Of course, the Court trusts that if there are any fingerprint, DNA, or other "results or reports…of any scientific test" relevant to Defendant's alleged possession of the firearm as charged in this matter, the Government will disclose those reports as required under Rule 16(a)(1)(F).  Finally, The Court will grant in part Defendant's request relating to expert disclosures, by setting a

deadline for the Government to make such disclosures under Rule 16(a)(1)(G)(ii) within 45 days of entry of this Order.

In Defendant's second Motion (d/e 66) relating to discovery, he complains that the Government sent him written discovery documents by FedEx, which the jail would have allowed him to review but would not allow him to possess in his cell.  According to the Government's representations in its Response (d/e 69), Defendant rejected the discovery because it would be subject to the jail's standard procedures regarding storage of discovery outside his cell, but available for review upon request.  Defendant complains that the only alternative for him to review discovery is an electronic disc, which "is not a situation the defendant agreed to."  (d/e 66 at 2).

The Government explained during the *Faretta* hearing that it could send paper and electronic copies of discovery to Defendant but that the Government could not override jail security policies and procedures.  The Government has followed the process that it disclosed to Defendant during that hearing, with the additional effort of sending the paper discovery documents by FedEx overnight so that Defendant would not be subject to the delays of the U.S.

Page **14** of **16**

Postal Service that the Government warned Defendant about during the hearing. The Seventh Circuit has held that a pro se criminal defendant is not entitled to "unfettered access" to copies of discovery to review in his cell. *United States v. Shaw*, 824 F.3d 624, 630 (7th Cir. 2016). Rather, it is sufficient that the Government provide only electronic copies on a disc, even when the defendant has limited access to the computer room at the jail. *Id.*

Defendant's request that this Court intervene to mandate that he be provided paper copies that he can review at any time in his cell is denied. Defendant has been advised of the arrival of both paper copies and electronic copies of discovery at the jail, and he may request review of them from jail staff using standard procedures. In addition, as a courtesy to the Court and to Defendant, if the Government is able to bring paper copies of all discovery to the courtroom before the suppression hearing on May 7, 2026, the Court—in coordination with logistical and security needs of the Marshals Service—intends to grant Defendant time to review those copies at the courthouse as well. *See Id.* ("[T]he district court offered [defendant] the opportunity to review the hard copies of the record in the courthouse, but [defendant] rejected the

offer."). The Government shall coordinate with the Marshal the time of delivery.

For the foregoing reasons, Defendant's discovery Motions (d/e 56, d/e 66) are DENIED, except as to his request for a pre-plea presentence investigation report which was previously GRANTED and for the setting of a time for the Government to make expert disclosures under Rule 16(a)(1)(G)(ii) which is now GRANTED.

**IT IS SO ORDERED.**
**ENTERED: May 5, 2026.**
**FOR THE COURT:**

/s/ Sue E. Myerscough
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**